[L. A. No. 3775. Department Two.—October 13, 1916.]

## R. L. EDWARDS, Respondent, v. JAMES ARP, Appellant.

VENDOR AND VENDEE—PRICE DETERMINED BY VALUE OF CROP—DUTY OF VENDEE IN POSSESSION NOT TO DIMINISH CROP.—Where as part of the purchase price of a tract of land the vendee who had been put in possession agreed to pay for certain walnut trees growing thereon a sum equal to ten times the proceeds received from the sale of the walnut crop for a specified year, after deducting the cost of harvesting and marketing the same, and the vendor under the contract of sale had no right to enter the land save for the limited purpose of supervising with the vendee the harvesting and gathering of the crop, it was the duty of the vendee not to do nor to permit to be done any act which would tend to diminish or destroy the crop; and if he permits his hogs, during harvest time, to range over the grove and destroy a portion of the crop, he is liable to the extent of the net value of the portion destroyed which would have constituted a partial basis for determining the purchase price.

ID.—ACTION FOR PURCHASE PRICE—UNLIQUIDATED DEMAND—INTEREST. An action to recover such purchase price is based on a demand which is uncertain and unliquidated, and interest thereon prior to judgment is not recoverable.

APPEAL from a judgment of the Superior Court of Kern County, and from an order refusing a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Kaye & Siemon, for Appellant.

Alfred Daggett, and T. M. M'Namara, for Respondent.

LORIGAN, J.—As part of the purchase price of a tract of land in Kern County appellant agreed, by written contract, to pay respondent for certain walnut trees growing thereon a sum to be determined as follows: From the gross proceeds received from the sale of the crop of walnuts for the year 1911 the cost of harvesting and marketing the same was to be deducted, and the appellant was to pay respondent a sum equal to ten times the net proceeds received from the sale of said walnut crop. The harvesting and marketing of the crop was to be done under the joint superintendence of the parties.

Respondent sued upon the contract to recover $2,333, the purchase price of the trees, and was awarded a judgment for $1,410.37 with interest on that amount from December 7, 1911, a date prior to the filing of his complaint. Appellant appeals from the judgment and order denying his motion for a new trial and seeks a reversal on two grounds.

He insists, first, that the court erred in including in the amount of the walnut crop of 1911 some five hundred pounds of nuts of the net value of sixty dollars which had been eaten or destroyed by hogs owned by appellant, and then awarding respondent ten times that sum—or six hundred dollars—in making up the judgment in his favor. He further claims that it was error for the court to allow interest at seven per cent from a date in December, 1911, after the nuts had been harvested and sold and up to the entry of the judgment. The action was commenced April 19, 1912.

As to the first point: The evidence shows that the walnut grove on which the crop was harvested consisted of about two acres of a larger tract embraced in the contract of sale; that appellant owned some hogs which, while he permitted them to roam over the entire tract he could readily have kept out of the walnut grove while the nut crop was ripening and being

harvested, and was requested by respondent to do so during that period; that appellant failed to take any precautions in that respect, but willfully permitted the hogs to range over the grove during all the time the nuts were ripening and falling, and also while the crop was being actually gathered and harvested, and a large quantity of the nuts had been shaken from the trees and lay on the ground; and that the hogs of appellant ate up or destroyed the quantity as found by the court.

The theory of the appellant in support of a reversal seems to be that he had a right at all times to range his hogs on any portion of the tract embraced in the contract of sale, including the walnut grove, and that though the exercise of that right resulted in a partial destruction of the nut crop by the hogs it is a loss for which respondent was entitled to no redress. Further, it is claimed by appellant, that conceding negligence on his part in permitting the hogs to roam over the grove, still respondent was guilty of contributory negligence in not taking proper precautions to prevent the depredations of the animals which also precluded any right of recovery on his part. As to the claim of contributory negligence the argument of appellant is that the contract of sale, in which this provision with reference to payment for the walnut trees is embraced, itself placed no limitation upon the right of appellant to use all of the premises for ordinary farming purposes, nor is there anything therein precluding him during any period of the year from ranging his hogs upon the land constituting the walnut grove; that the contract as respects the grove gave as much right to respondent as the appellant had, to enter the grove and harvest and market the crop; that it was as much the duty of respondent as of appellant to provide means for protecting the crop from the ravages of the hogs and respondent having failed to do so cannot complain of any loss he may have suffered.

We cannot indorse the theory of appellant or accept his argument as sound. Taking up the points made by him inversely, there is no ground for the assertion that respondent was guilty of contributory negligence in not keeping the hogs of appellant out of the grove. Under the contract of sale of the property appellant was given possession of the tract including the grove. Respondent had no right to enter it

save for the limited purpose of supervising jointly with ap-
pellant the harvesting and gathering of the nut crop and
for that purpose only. Nothing in the contract authorized
respondent to enter the premises and build fences to inclose
the grove, and there was no contractual or legal duty imposed
upon him to do so or to employ swine-herds to prevent the
hogs of appellant from ranging over it. Under the contract
the walnut crop was made the basis of the price to be paid
for the trees, and appellant being in possession of the tract
embracing it, it was his duty to conduct himself respecting
it so as to neither do, or permit to be done, any act which
would tend to diminish or destroy the crop of walnuts. Ob-
viously it was to the interest of appellant that no crop should
be harvested off the grove in 1911; and to the extent that
any prospective crop might be diminished or destroyed by
appellant permitting his hogs to roam through the grove dur-
ing harvest time it would be of material advantage to him.
But it is fundamental that one cannot take advantage of his
own wrong, and to sanction the conduct of appellant in the
face of the purposes of their contract would be to violate that
principle. Whatever right the appellant had to range his
hogs over the entire premises at other seasons of the year,
he had no right, having a due regard to a fair and honest
carrying out of the contract between himself and respond-
ent, to range them over the grove at a time when the crop
had ripened and was ready for gathering and harvesting,
and when the inevitable result would be to have a large quan-
tity of it destroyed. The duty of appellant under the con-
tract was to permit nothing to be done which he might prevent
that would diminish the nut crop to be harvested and gath-
ered, and his disregard of that duty, by negligently allowing
his hogs to range over the grove and destroy a portion of
the crop, made him liable to respondent to the extent of the
net value of the portion of the crop destroyed which would
have constituted a partial basis for determining the price
to be paid for the walnut trees. The court found that five
hundred pounds of walnuts of the market value of twelve
cents per pound, amounting to sixty dollars, were so de-
stroyed, and determined that defendant was liable to ten
times the value thereof under the terms of the contract.
While appellant contends that this is a departure from the
method whereby under the contract the purchase price of

the trees was to be fixed we do not think this is true. It is in effect adopting just the standard which the parties provided. If the hogs of the appellant had not destroyed a portion of the crop it would have been taken into account in fixing the purchase price of the trees. If the appellant had surreptitiously given away that amount of the nut crop or burned up a like quantity, it certainly could have been taken into consideration in settling the rights of the parties under their contract. So, here, the wrongful act of the appellant in negligently permitting his hogs to destroy it having prevented the actual gathering and harvesting of a portion of the crop, the court properly ascertained what its value would have been had not appellant thus prevented its being actually harvested and marketed, and took that value into consideration to the same extent exactly as it was to be taken under the contract in determining the purchase price of the trees.

The second point made by appellant is that the court erred in allowing respondent interest from the first day of December, 1911, at which date the court found that the crop of walnuts was fully marketed and disposed of by both respondent and appellant. We think this point is well taken. Here the demand sued on was uncertain and unliquidated. The fact of the contract furnished nothing whereby it could be determined by calculation what amount was due plaintiff. The elements under which the amount due was to be ascertained were uncertain. The quantity of the nuts gathered and sold, the cost of harvesting, and the market value of the crop were all matters to be determined upon a trial and when that is the situation interest is not allowable prior to judgment. (*Brady* v. *Wilcoxson,* 44 Cal. 245; *Esterbrook* v. *Farquharson,* 110 Cal. 311, [42 Pac. 811].) This error, however, does not require a reversal of the order and judgment appealed from. It can be remedied by a modification of the judgment. The order appealed from is therefore affirmed. The cause is, however, remanded with directions to the trial court to modify the judgment by striking out the amount allowed for interest prior to judgment, and as thus modified the judgment is to stand affirmed. Appellant to recover his costs on this appeal.

Melvin, J., and Henshaw, J., concurred.